_____

SO ORDERED,

*Katharine M. Samson*

**Judge Katharine M. Samson**
**United States Bankruptcy Judge**
**Date Signed: September 2, 2014**

The Order of the Court is set forth below. The docket reflects the date entered.
_____

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE: MELISSA CRUMEDY | CASE NO. 13-50513 |
| DEBTOR | CHAPTER 7 |
| PIKCO FINANCE, INC. | PLAINTIFF |
| V. | ADV. NO. 13-05020 |
| MELISSA CRUMEDY | DEFENDANT |

## MEMORANDUM OPINION AND ORDER

This matter came before the Court for trial on April 29, 2014, (the "Trial") on the Amended Complaint Objecting to Dischargeability of a Debt, (Adv. Dkt. No. 4), filed by creditor-plaintiff Pikco Finance, Inc. ("Pikco"), and the Answer to Complaint, (Adv. Dkt. No. 8), filed by debtor-defendant Melissa Crumedy ("Crumedy"). At Trial, Richard R. Grindstaff represented Crumedy and John S. Simpson represented Pikco. The parties introduced 13 exhibits by stipulation. At the hearing, Crumedy testified briefly, but her testimony was abbreviated after both parties stipulated to the admission of a fourteenth exhibit: the transcript of Crumedy's § 341 meeting of creditors. The Court also invited the parties to submit post-trial briefs on the issue of whether the entire loan or just the value of the new money received would be non-dischargeable

under § 523. On June 6, 2014, both Crumedy and Pikco submitted their briefs. (Adv. Dkt. Nos. 39, 40). Pikco also submitted a rebuttal brief on June 20, 2014. (Adv. Dkt. No. 41). Having considered the evidence, the Court finds that the obligation is non-dischargeable in full for the reasons set forth below.[1]

## I. JURISDICTION

The Court has jurisdiction of the parties to and the subject matter of this Adversary pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (I).

## II. FINDINGS OF FACT

The facts surrounding the Pikco loan in question are largely undisputed. On March 6, 2013, Crumedy refinanced two previous loans she had with Pikco (the "March loan"). (Exh. 5; Exh. 14 at 5). The total amount financed was $1,440.73. (Exh. 5).[2] Malasia Bridges was a co-borrower on one of the previous loans that was paid off. (Exh. 1).[3] As a result of the refinance, Bridges was released as a co-debtor. (Adv. Dkt. No. 40 at 8). Crumedy also received approximately $250.00 in cash. (Exh. 5). Crumedy then filed for protection under Chapter 7 of the Bankruptcy Code[4] on March 18, 2013.[5] At the meeting of creditors—held on April 12, 2013—Crumedy testified that she knew a year prior to receiving her tax return that she was

---

[1] Pursuant to Federal Rule of Civil Procedure 52, made applicable to this Adversary by Federal Rule of Bankruptcy Procedure 7052, the following constitutes the findings of fact and conclusions of law of the Court.

[2] Specifically, the remaining balances of $552.28 for loan 484-1 and $473.04 for loan 467-1 were paid off.

[3] Malasia Bridges is apparently Crumedy's daughter. Crumedy testified at her meeting of creditors that a manager at Pikco called and informed her that her daughter would not be able to go to school if Crumedy did not refinance the August 1, 2012 loan. (Exh. 14 at 4).

[4] "Bankruptcy Code" or "Code" refers to the United States Bankruptcy Code located at Title 11 of the United States Code. All Code sections hereinafter will refer to the Bankruptcy Code unless noted otherwise.

[5] (Dkt. No. 1). The Chapter 7 Trustee entered his Report of No Distribution on April 17, 2013. Crumedy was granted a discharge on June 26, 2013. (Dkt. No. 22).

going to use her refund money to file bankruptcy. (Exh. 14 at 6–7). Crumedy has not made any payments on the March loan.[6] At the meeting of creditors, Crumedy did offer to reaffirm the debt up to $250.00—the amount she received in cash. (Exh. 14 at 15, lines 18–19). Counsel for Pikco refused to accept the offer. (*Id.* at line 20).[7] Pikco initiated this adversary proceeding against Crumedy on June 11, 2013. (Dkt. No. 20; Adv. Dkt. No. 1).

Pikco seeks to have the entire debt—which it claims is $1,462.26—plus attorney's fees and post-petition interest at the contract rate of 35.52%, declared non-dischargeable under § 523(a)(2)(A). (Adv. Dkt. No. 4). Though not raised in either the original or amended complaints, Pikco also argues in its post-trial brief that the debt is non-dischargeable under § 523(a)(2)(B). (Adv. Dkt. No. 40 at 7). Section 523(a)(2)(B) was also raised in the pre-trial order. (Adv. Dkt. No. 34 at 2, ¶ E). Crumedy did not object to Pikco raising § 523(a)(2)(B),[8] and Pikco has not sought to amend its complaint to include it. Regardless, the Court finds that the debt is non-dischargeable in full under § 523(a)(2)(A). As a result of this finding, the Court is not required to reach the merits of Pikco's argument under § 523(a)(2)(B).

### III. CONCLUSIONS OF LAW

**A. Burden of Proof**

A debtor is generally granted a discharge of all prepetition debts in a chapter 7 bankruptcy case, with the exception of certain debts described in § 523(a). *Bandi v. Becnel (In re Bandi)*, 683 F.3d 671, 674 (5th Cir. 2012) *cert. denied,* 133 S. Ct. 845 (2013). The Fifth Circuit has stated that "[e]xceptions to discharge should be construed in favor of debtors in accordance

---

[6] Crumedy's first payment was due on April 17, 2014. (*Id.*).

[7] Crumedy also filed an offer of judgment in the same amount on January 25, 2014, which Pikco rejected. (Adv. Dkt. No. 23).

[8] Crumedy did argue that Pikco had not met the elements for non-dischargeability under § 523(a)(2)(B) in her post-trial brief. (Adv. Dkt. No. 39 at 2–3).

with the principle that provisions dealing with this subject are remedial in nature and are designed to give a fresh start to debtors unhampered by pre-existing financial burdens." *In re Davis*, 194 F.3d at 573. In a proceeding under § 523, the party seeking a determination of non-dischargeability bears the burden of proof by a preponderance of the evidence.[9] *Grogan v. Garner*, 498 U.S. 279, 287–88 (1991); Fed. R. Bankr. P. 4005. Requiring the party objecting to the dischargeability of a debt to "carry the burden of proof comports with the policy behind federal bankruptcy law which favors discharge in an effort to provide the debtor with a fresh start." *Rustin v. Rustin (In re Rustin)*, No. 04-50890-NPO, 2011 WL 5443067, at *7 (Bankr. S.D. Miss. Nov. 9, 2011) (*citing* 4 Collier on Bankruptcy ¶ 523.05 (16th ed. 2010)). In its complaint, Pikco seeks to have the entire amount of the March loan—$1,462.26 plus post-petition interest at the contractual rate of 35.2%—in addition to attorney's fees declared non-dischargeable under 11 U.S.C. § 523(a)(2)(A). (Adv. Dkt. No. 4 at 2). Therefore, Picko bears the burden of proving each of the required elements of 11 U.S.C. § 523(a)(2)(A) by a preponderance of the evidence.

**B.    11 U.S.C. § 523(a)(2)(A)**

Section 523(a)(2)(A) excepts from discharge "any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). "Section 523(a)(2)(A) encompasses three similar grounds for non-dischargeability, all of which apply to 'debts obtained by frauds involving moral turpitude or intentional wrong.'" *In re Futch*, 2011 WL 576071, at *17 (*citing First Nat'l Bank LaGrange v. Martin (In re Martin)*, 963 F.2d 809, 813 (5th Cir. 1992)). The Fifth Circuit has

---

[9] "A fact is proven by a preponderance of the evidence if the Court finds it more likely than not the fact is true." *Lanier v. Futch (In re Futch)*, No. 09-00144-NPO, 2011 WL 576071, at *16 (Bankr. S.D. Miss. Feb. 4, 2011) (*citing EPA v. Sequa Corp. (In re Bell Petroleum Servs., Inc.)*, 3 F.3d 889, 909–10 (5th Cir. 1993)).

recognized a distinction between the elements of proof required for false pretenses or false representation and those required for actual fraud. *AT&T Universal Card Servs v. Mercer (In re Mercer)*, 246 F.3d 391, 403 (5th Cir. 2001). This distinction "appears to be a chronological one, resting upon whether a debtor's representation is made with reference to a future event, as opposed to a representation regarding a past or existing fact." *ETRG Investors, LLC v. Hardee (In re Hardee)*, No. 11-60242, 2013 WL 1084494, at *12 (Bankr. E.D. Tex. Mar. 14, 2013) (*citing Bank of Louisiana v. Bercier (In re Bercier),* 934 F.2d 689, 692 (5th Cir.1991) ("[A debtor's] promise . . . related to [a] future action [that does] not purport to depict current or past fact . . . therefore cannot be defined as a false representation or a false pretense")).

Pikco asserts that Crumedy's promise to repay the March loan was a false representation because she knew at the time the loan was executed that she was going to file bankruptcy once she received her tax refund. (Adv. Dkt. No. 40 at 5). Because the alleged misrepresentation concerns a future event, it cannot be defined as a false pretense or false representation. Thus, Pikco must meet the requirements for showing actual fraud under § 523(a)(2)(A).

**1. Actual Fraud**

A party objecting to discharge of a debt under § 523(a)(2)(A) for *actual fraud* must demonstrate that: (1) the debtor made representations; (2) the debtor knew the representations were false at the time they were made; (3) the representations were made with the intention and purpose to deceive the creditor; (4) the creditor actually and justifiably relied on the representations; and (5) the creditor sustained a loss as a proximate result of its reliance. *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995).

    **i. Whether Crumedy made representations that she knew were false at the time they were made**

Crumedy made a false representation concerning her ability to repay. She testified at the

meeting of creditors that she knew for nearly a year before the March loan that she was going to file bankruptcy using her tax refund money. (Exh. 14 at 7, line 21). She also testified that she specifically knew she was going to file bankruptcy as soon as she had the funds to do so before she executed the March loan. (*Id.* at 5). Thus, Crumedy knew when she executed the March loan that she was not going to repay it. Nevertheless, she signed the promissory note and security agreement on March 6, 2013, representing to Pikco that she would repay the loan in full. Crumedy then filed bankruptcy prior to the time her first payment was due.

### ii. Whether the representations were made with the intention and purpose of deceiving Pikco

Crumedy could not have obtained the March loan from Pikco if she had disclosed her intent to file bankruptcy using her tax refund money. Indeed, in order to obtain the loan, Crumedy promised to repay Pikco in full. She executed the promissory note and security agreement; refinanced her previous loans, which released her daughter as a co-debtor on one of the loans; and obtained $250.00 in cash knowing she would file bankruptcy shortly. Moreover, even if Crumedy was unsure of the actual date she would be filing, she stipulated at trial that she was aware that she would be filing bankruptcy "around the time" of the March loan. Thus, she knew she would not be repaying the loan in full as promised in her agreement with Pikco. The Court finds that this behavior demonstrates her intent to deceive Pikco.

### iii. Whether Pikco relied on Crumedy's representations and suffered a loss as a proximate result of that reliance

Section 523(a)(2)(A) requires justifiable—not reasonable—reliance. *Field v. Mans*, 516 U.S. 59, 74–75 (1995). And "[t]he justifiable reliance standard imposes no duty to investigate unless the falsity of the representation is readily apparent or obvious or there are 'red flags' indicating such reliance is unwarranted." *Third Coast Bank v. Cohen (In re Cohen).* No. 12-

1004, 2013 WL 4079369, at *12 (Bankr. E.D. Tex. Aug. 13, 2013) *(citing Manheim Auto. Fin. Servs, Inc. v. Hurst (In re Hurst)*, 337 B.R. 125, 133–34 (Bankr N.D. Tex. 2005)). Moreover, "[a] person may be justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'" *In re Futch, No*. 09-01841-NPO, 2011 WL 576071, at *20 (Bankr. S.D. Miss. Feb. 4, 2011) (*citing Field v. Mans*, 516 U.S. 59, 70 (1995) (*quoting* The Restatement (Second) of Torts, § 537 (1976))). "Stated another way, unless the falsity of a misrepresentation is obvious, or unless there are 'red flags' that serve as a warning that he is being deceived, a person's reliance is justifiable." *Id.* (*citing In re Mercer*, 246 F.3d 391, 418 (5th Cir. 2001)).

Pikco justifiably relied on Crumedy's promise to repay the loan. Crumedy did not disclose her intent to file bankruptcy, and she failed to adduce any other evidence at trial indicating Pikco was unjustified in relying on her promise to pay. As a result of its reliance, Pikco has not been paid anything on the March loan and was forced to file this adversary proceeding to avoid discharge of the debt. Thus, the Court finds that Pikco has satisfied the requirements of § 523(a)(2)(A) and turns now to the issue of whether only the new money received is non-dischargeable or whether the full loan amount is non-dischargeable.

### 2. Amount of Debt that is Non-Dichargeable

Pikco contends that the entire March loan, not just the value of new money received, is non-dischargeable. (Adv. Dkt. No. 40). Crumedy maintained at trial that only the value of the cash she received is non-dischargeable.[10] The parties submitted post trial briefs on the issue and the Court now finds that the entire March loan is non-dischargeable pursuant to § 523(a)(2)(A).

---

[10] Crumedy did not renew her contention that only the $250.00 in new money she received was non-dischargeable in her post-trial brief. Instead, she argues generally that Pikco "failed to prove the requisite elements required." (Adv. Dkt. No. 39 at 5).

First, § 523(a)(2) specifically enumerates debts for a "renewal[] or refinancing of credit" as classes of obligations that may be excepted from discharge. 11 U.S.C. § 523(a)(2). This language suggests that, even if no new funds are disbursed during a refinance or renewal, the entire amount of the refinance or renewal may be excepted from discharge. *See Norris v. First Nat'l Bank (In re Norris),* 70 F.3d 27, 29–30 (5th Cir. 1995) (finding the entire amount of renewal was excepted from discharge even though no new money had been disbursed during the renewal). Next, § 523(a)(2)(A) specifically states that "any debt . . . for . . . [a] renewal[] or refinancing" is excepted from discharge "to the extent obtained by" fraud. 11 U.S.C. § 523(a)(2)(A). Thus, "'once it is established that specific money or property has been obtained by fraud . . . 'any debt' arising therefrom is excepted from discharge.'" *Jacobson v. Ormsby (In re Jacobson),* No. 04-51572-RBK, 2006 WL 2796672, at *14 (W.D. Tex. Sept. 26, 2006) (*quoting Cohen v. Cruz,* 523 U.S. 213, 218 (1998)). Courts have interpreted this language to mean that dischargeability is an all or nothing proposition. *See In re Gerlach,* 897 F.2d 1048, 1051 (10th Cir. 1990); *Norris,* 70 F.3d at 29, n.6; *Jacobson,* 2006 WL 2796672, at *14. Finally, the legislative history of § 523(a)(2) supports the conclusion that the entire amount renewed or refinanced is non-dischargeable:

> The amount of the debt made nondischargeable . . . is not limited to "new value" when a loan is rolled over. . . . [W]here the original financial statement is made under non-fraudulent conditions and the entire loan in addition to new money is advanced under a subsequent false financial statement, the entire loan is made under fraudulent conditions.

H.R. Rep. No. 595, 95th Cong., 1st Sess. 129–30 (1977), *reprinted in* 1978 U.S. Code Cong. & Admin. New 5787, 6090-91. If Congress intended this outcome with regard to false financial statements under § 523(a)(2)(B), surely it also intended the same outcome with regard to debts obtained by fraud under § 523(a)(2)(A).

Accordingly, the Court finds that the March 2006 loan is non-dischargeable in full. In its amended complaint, Pikco claims the amount of the debt is $1,462.26; however, the note and security agreement indicate that the total "amount financed" in the March loan was $1,440.73. (Exh. 5 at 1). The Court finds that the non-dischargeable debt owed to Pikco is $1,440.73 and turns now to Pikco's other requests for damages.

**C. Damages**

The Court has already found that Crumedy's debt to Pikco is non-dischargeable pursuant to § 523(a)(2)(A). Pikco also seeks interest at 35.2%— the contract rate—and an award of reasonable attorney's fees. In *Cohen v. Cruz*, 523 U.S. 213 (1998), the Supreme Court held that the scope of damages determined non-dischargeable under § 523(a)(2)(A) may extend beyond the value of the funds obtained by fraud to encompass "all liability arising from fraud." *Id.* at 215. Thus, Pikco is entitled to damages beyond the amount of the March loan to the extent they arose from Crumedy's fraudulent actions.

First, to the extent Pikco requests post-judgment interest at the contract rate, it is entitled to interest at the federal judgment rate pursuant to 28 U.S.C. § 1961—not its contractual rate of 35.2%—from the date of entry of this order and opinion until the debt is paid in full. Next, to the extent Pikco requests pre-judgment interest, it is ultimately within the discretion of the Court to determine whether it is entitled to it. *Williams v. Trader Pub. Co.,* 218 F.3d 481, 488 (5th Cir. 2000). And "[t]he determination of whether pre-judgment interest should be awarded requires a two-step analysis: does the federal act creating the cause of action preclude an award of pre-judgment interest" and "does an award of pre-judgment interest further the congressional policies of the federal act." *Turbo Aleae Inv., Inc. v. Borschow (In re Borschow),* 454 B.R. 374, 403 (Bankr. W.D. Tex. 2011) (*quoting Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dep't. Stores, Inc.* 15 F.3d 1275, 1288 (5th Cir. 1994)).

Section 523(a)(2) does not preclude an award of pre-judgment interest, and the "intent of § 523(a)(2) is to prevent a debtor from discharging a loan obtained by fraud." *Id.* at 404. Thus, it would appear that an award of pre-judgment interest would further the congressional policies of § 523(a)(2). But the interest rate in this case is exceptionally high at 35.2%. Rather than simply preventing Crumedy from discharging a loan obtained by fraud and making Pikco whole, an award of interest at this rate would create a windfall for Pikco. Accordingly, the Court finds that a pre-judgment award of interest at the 35.2% contract rate is neither appropriate nor necessary to make Pikco whole.

Last, with respect to Pikco's request for attorney's fees, "'prevailing creditors still have no *statutory* right to attorney's fees' because § 523(d) only gives prevailing debtors a right to attorney's fees," but creditors still have "the *contractual* right to attorney's fees . . . when that right arises from a contract between the creditor and the debtor . . . ." *Matter of Luce*, 960 F.2d 1277, 1286 (5th Cir. 1992) (emphasis in original) (*quoting Martin v. Bank of Germantown (In re Martin)*, 761 F. 2d 1163, 1168 (6th Cir. 1985)). Pursuant to the promissory note and security agreement signed by Crumedy, upon default by the borrower, the lender is entitled to attorney's fees and court costs equivalent to 33 1/3% of the unpaid balance of the loan.[11] Thus, Pikco is contractually entitled to costs and attorney's fees equivalent to 33 1/3% of 1,440.73, or $480.24.

### IV. CONCLUSION

For the reasons stated above, the Court finds that Crumedy's obligation on the March

---

[11] (Exh. 5 at 1). The promissory note and security agreement states:

> DEFAULT AND ACCELERATION: Upon default by Borrower, Lender may (i) bring suit for the delinquent payments without accelerating the remaining balance and/or (ii) declare the remaining balance immediately due and payable, less any rebate of unearned Finance Charges as provided for above; and Borrower shall pay any court costs and attorneys [sic] fees of 33 1/3% of the unpaid balance. After default, the Lender will not increase the interest rate on the delinquent amount of the loan.

*Id*.

loan is non-dischargeable in the amount of $1,440.73 plus attorney's fees and costs in the amount of $480.24 for a total of $1,920.97 in addition to post-judgment interest at the federal judgment rate until paid.

**THEREFORE IT IS ORDERED AND ADJUDGED** that, pursuant to 11 U.S.C. § 523(a)(2)(A), the debt owed to Pikco by Crumedy in the amount of $1,440.73 is not dischargeable and Pikco's request for attorney's fees and costs is **GRANTED** in the amount of $480.24.

**IT IS FURTHER ORDERED AND ADJUDGED** that Pikco's request for post-petition interest at the contract rate is **DENIED**.

## END OF OPINION ##